IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  23-2359

ROCKY MOUNTAIN IMMIGRANT ADVOCACY
NETWORK,

    Plaintiff,

v.

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT,

    Defendant.

---

**COMPLAINT FOR INJUNCTIVE RELIEF**

---

## INTRODUCTION

1. For nearly ten months, Defendant U.S. Immigration and Customs Enforcement (ICE) has disregarded its obligations and violated its governing statutes and regulations by failing to respond to a Freedom of Information Act (FOIA) request. It must be forced to comply and produce documents.

2. On October 13, 2022, Melvin Ariel Calero Mendoza, a healthy 39-year-old father from Nicaragua seeking asylum in the United States, died while detained by ICE at the Aurora Contract Detention Facility (ACDF) (also known as the Denver Contract Detention Facility (DCDF) or the Aurora ICE Processing Center (AIPC)), which is owned and operated by a private corporation, GEO Group, Inc. (GEO).

3. According to subsequent media reports of two autopsies, including a government

autopsy by the Office of the Coroner for Adams and Broomfield Counties, the cause of Melvin's death was a pulmonary embolism caused by blood clotting, likely related to right lower-leg and foot pain for which Melvin had repeatedly sought medical treatment from ACDF in the weeks leading up to his death.[1]

4. Melvin's death fits into an identified pattern of preventable deaths among young, relatively healthy people detained by ICE, as noted by medical experts who have reviewed the government autopsy report.[2]

5. On November 10, 2022, to investigate the detention conditions leading to Melvin's death, Plaintiff Rocky Mountain Immigrant Advocacy Network (RMIAN) submitted a FOIA request (Ex. 1; "Request") to ICE for records related to Melvin's death and the conditions of his detention.

6. Under U.S. Department of Homeland Security (DHS) regulations, RMIAN also requested that ICE expedite processing of the Request.

7. In violation of FOIA and corresponding DHS regulations, ICE failed for more than seven months to provide any response to RMIAN's FOIA Request or its request for expedited processing and to produce any responsive records.

---

[1] Matt Bloom & Alejandro A. Alonso Galva, *Independent Autopsy of Death at Aurora ICE Facility Confirms Man Died of Embolism Tied to Untreated Injury*, CPR News (Apr. 18, 2023), https://bit.ly/3pH9Lcp; Matt Bloom, *Aurora ICE Death Autopsy Released, Raises Questions About Medical Care in Federal Detention Centers*, CPR News (Feb. 15, 2023), https://bit.ly/3R8PIyV.

[2] Bloom, *supra* note 1; *see also* Parveen Parmar, et al., *Mapping Factors Associated with Deaths in Immigration Detention in the United States, 2011-2018: A Thematic Analysis*, The Lancet Regional Health – Am. 8 (Oct. 2021), https://bit.ly/3D7IFOL ("In a majority of these death reviews, early signs of critical illness were missed, including markedly abnormal vital signs that were ignored by health staff.").

8. Only after RMIAN followed up in July 2023 did ICE acknowledge RMIAN's requests. And, even then, ICE merely issued a boilerplate denial of RMIAN's request for expedited processing that did not address each of RMIAN's grounds for expedited processing. Meanwhile, ICE has not provided any determination whether it will comply with the underlying FOIA Request. *See* 5 U.S.C. § 552(a)(6)(A)(i).

9. This is not the first time that a person's death at ACDF has raised questions about the facility's medical care, nor is it the first time that FOIA requesters have had to resort to litigation to compel ICE to produce the related records. *See Am. Civil Liberties Union v. U.S. Immigr. and Customs Enf't*, 1:19-cv-01036-NYW (D. Colo.) (seeking records relating to immigrant's death in ICE's custody at ACDF); *see also Civil Rights Educ. and Enf't Ctr. v. U.S. Dep't of Homeland Sec.,* 1:18-cv-00392-JLK (D. Colo.) (seeking records regarding conditions of confinement at four detention facilities, including ACDF); *see generally* Tom Dreisbach, *Government's Own Experts Found 'Barbaric' and 'Negligent' Conditions in ICE Detention*, NPR (August 16, 2023), https://bit.ly/3LkksJu (describing NPR's efforts over more than three years to obtain inspection reports by outside experts of 26 ICE detention facilities, including records related to Melvin's death and the death of another person in ICE's custody at ACDF); Tom Dreisbach, *A 'shocking' 911 call and other key takeaways from NPR's ICE detention investigation*, NPR (August 24, 2023), https://bit.ly/3PAsPmA (same). This Court should order ICE to process RMIAN's FOIA Request on an expedited basis and to produce the responsive records immediately.

## JURISDICTION, VENUE, AND ADMINISTRATIVE EXHAUSTION

10. This Court has personal and subject matter jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

11. Venue is proper in the District of Colorado pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

12. Because ICE failed to comply with the applicable time limits for responding to FOIA requests, RMIAN is deemed to have exhausted administrative remedies for purposes of its FOIA Request. 5 U.S.C. § 552(a)(6)(C)(i). Further, RMIAN is not required to file an administrative appeal of ICE's denial of its request for expedited processing. 6 CFR § 5.8(e).

## PARTIES

13. RMIAN is a 26 U.S.C. § 501(c)(3) nonprofit organization based in Westminster, Colorado that works to ensure justice for adults and children in immigration proceedings. RMIAN promotes knowledge of legal rights; provides zealous no-cost immigration legal representation to uphold fundamental fairness and due process; promotes the importance of universal representation where anyone in immigration proceedings has access to counsel despite financial barriers; and advocates for a more efficient, functional, and humane immigration system.

14. RMIAN has represented and continues to represent numerous people detained within ACDF, including individuals present during Melvin's medical emergency and/or who observed the response of officials within ACDF.

15. ICE is an agency for purposes of FOIA (5 U.S.C. § 552(f)(1)) and a component of DHS subject to its corresponding regulations (6 C.F.R. §§ 5.1(a)–(c); 5.3(a)(1); 5.4(a)–(b); 5.5(a); Pt. 5, App. A).

## FACTUAL ALLEGATIONS

The Detention and Death of Melvin Ariel Calero Mendoza at ICE's ACDF[3]

16. Melvin Ariel Calero Mendoza was a 39-year-old asylum seeker fleeing persecution in Nicaragua.[4]

17. After being detained upon his entry into the United States in El Paso, Texas, in April 2022, Melvin was ultimately transferred to ACDF on May 2, 2022. His medical intake screening on May 2 and his intake health assessment on May 21 were normal, other than that he experienced some eye redness after prolonged periods of reading.

18. Six months later, in or around early August 2022, Melvin sustained a right foot injury while playing soccer.

19. In the weeks that followed, he repeatedly sought medical treatment from ACDF. First, on September 1, 2022, an ACDF licensed practical nurse (LPN) evaluated Melvin for right foot pain that was "stabbing and worsening with weight bearing," prescribed him acetaminophen and ibuprofen, and instructed him to stay off of his right foot for 48 hours. On September 12, 2022, an ACDF LPN again evaluated Melvin for "sharp pain in his right great toe," prescribed him ibuprofen, and instructed him to apply ice and warm compresses. On September 29, 2022, an

---

[3] Unless otherwise indicated, the allegations in this section are taken directly from ICE's "Detaine[d Person] Death Report" for Melvin. U.S. Immigration and Customs Enforcement, *Detaine[d Person] Death Report: MENDOZA, Melvin Ariel Calero* (2022), https://bit.ly/3NO7GmT. According to media reports, however, there are discrepancies between ICE's "Detaine[d Person] Death Report" and the county coroner's autopsy. *See* Bloom & Galva, *supra* note 1.

[4] Marissa Armas, *Melvin Ariel Calero-Mendoza, Nicaraguan Father of 2, Dies in ICE Custody at Aurora Facility*, CBS Colorado (Oct. 20, 2022), https://cbsn.ws/3JRqpg4; Kelly Reinke, *Nicaraguan Man Sought Better Life Before He Died in ICE Custody in Aurora, Family Says*, NBC 9 News Colorado (Updated Oct. 19, 2022), https://bit.ly/3PMmZiG.

5

ACDF LPN again evaluated Melvin for "severe pain and swelling to his right calf for the past two days," prescribed him ibuprofen, and instructed him to elevate and apply ice to his right leg. Based on ICE's "Detaine[d Person] Death Report," it appears that Melvin was never seen by a doctor.

20. On October 13, 2022, at 10:49 a.m., an ACDF custody officer requested emergency medical assistance for Melvin.

21. A 911 call made by ACDF staff on the morning of October 13 was only recently made public as a result of a Colorado Open Records Act request by NPR. Dreisbach, *'Barbaric' and 'Negligent' Conditions*, *supra* ¶ 9. In the recording, the unnamed detention officer, with apparent nonchalance and apathy, (1) gave the 911 dispatcher the wrong address for the facility; (2) could not provide any details of Melvin's medical emergency, other than that it was a "code blue;" and (3) repeatedly placed the dispatcher on hold, including when asked how paramedics could access the building. *Id.*; *accord* Dreisbach, *A 'shocking' 911 call*, *supra* ¶ 9.

22. An ambulance transferred Melvin to the UCHealth emergency department where he experienced cardiac arrest. At 12:32 p.m., a doctor pronounced him dead.

23. According to subsequent autopsy reports, Melvin suffered a pulmonary embolism caused by blood clotting, likely related to his right lower-leg and foot pain.[5]

RMIAN's FOIA Request and ICE's Failure to Respond

24. On November 10, 2022, RMIAN submitted a FOIA Request to ICE describing 22 categories of records related to Melvin's death, including government reports, autopsy reports, Melvin's medical records, surveillance camera footage, communications among ACDF staff, ACDF's medical policies, and information about the individuals who treated Melvin.

---

[5] Bloom & Galva, *supra* note 1.

25. ICE has possession, custody, and control of records responsive to RMIAN's Request.

26. By signed certification, RMIAN also requested expedited processing of its Request on each of the four grounds listed in DHS regulations (6 C.F.R. § 5.5(e)(1)(i)-(iv)), including, for example, that the Request involved "[c]ircumstances in which the lack of expedited processing could reasonably be expected to pose an imminent threat to the life or physical safety of an individual" and "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." (6 C.F.R. § 5.5(e)(1)(i), (iv)). Request at 6–8.

27. RMIAN explained:

    a. ACDF "has a lengthy history of providing inadequate medical care for persons detained [in] ICE custody."[6] *Id.* at 7 (cited sources listed in footnote).

    b. In particular, a man previously detained in ICE custody, Kamyar Samimi, passed away while held in ACDF; "[d]espite an initial report from ICE that there was no fault involved," subsequent reports — including by ICE's Office

---

[6] Administrative complaint from American Immigration Council (AIC), et al. re: Violations of ICE COVID-19 Guidance, PBNDS 2011, and Rehabilitation Act of 1973 at the Denver Contract Detention Facility (Feb. 11, 2022), https://bit.ly/3JVdrhD (compiling stories of immigrants' medical mistreatment at ACDF); American Civil Liberties Union of Colorado, *Cashing in on Cruelty: Stories of Death, Abuse and Neglect at the GEO Immigration Detention Facility in Aurora* (Sept. 17, 2019), https://bit.ly/3PcIpUd (similar); Administrative complaint from AIC and American Immigration Lawyers Association (AILA) re: Failure to Provide Adequate Medical and Mental Health Care to Individuals Detained in the Denver Contract Detention Facility (June 11, 2019), https://bit.ly/3PUbHZQ (similar); Administrative complaint from AIC and AILA re: Failure to Provide Adequate Medical and Mental Health Care to Individuals Detained in the Denver Contract Detention Facility (June 4, 2018), https://bit.ly/46HzWAj (similar).

of Professional Responsibility — found numerous violations of ICE detention standards.[7] *Id.* at 5 (cited sources listed in footnote). Further, a subsequent DHS report found that ACDF fails to meet ICE's own detention standards.[8] *Id.* at 6 (cited source listed in footnote).

c. Absent meaningful reforms, the conditions at ACDF present a risk to the safety and well-being of detained persons, including RMIAN's clients, who "continue to be detained in the same space and by the same custodians." *Id.* at 5.

d. Additionally, Melvin's death has "generated significant attention from the public,"[9] including a joint call by Representative Jason Crow and Senators

---

[7] Staff of H. Comm. on Oversight and Reform and Subcomm. on Civil Rights and Civil Liberties, *The Trump Administration's Mistreatment of Detained Immigrants: Deaths and Deficient Medical Care by For-Profit Detention Contractors*, 15 (Sept. 2020), https://bit.ly/43lJKgo ("House Subcommittee Report") ("The Committee obtained internal documents showing that Mr. Samimi's death resulted from egregious violations of medical standards and that these violations were part of systemic issues at the Aurora facility."); ICE Office of Professional Responsibility, External Reviews and Analysis Unit, *Detaine[d Person] Death Review: Kamyar Samimi* (May 22, 2018), https://bit.ly/3EriXp7 (finding numerous violations of standards for medical care, safety, and security); *see also* House Subcommittee Report, *supra* note 7 at 15 ("While the medical examiner ruled the cause of death 'undetermined,' the complete lack of medical leadership, supervision and care that this [person] was exposed to is simply astonishing and stands out as one of the most egregious failures to provide optimal care in my experience.") (quoting a medical expert report).

[8] DHS Office of Inspector General, *Concerns about . . . Treatment and Care at Four Detention Facilities* (June 3, 2019), https://www.oig.dhs.gov/sites/default/files/assets/2019-06/OIG-19-47-Jun19.pdf.

[9] Kelly Reinke, *supra* note 4 ("A group of community members gathered outside the ICE detention facility in Aurora on Tuesday night to demand answers as well."); Conor McCormick-Cavanagh, *Nicaraguan Asylum Seeker Dies in ICE Custody in Aurora*, Westword (Oct. 17, 2022), https://www.westword.com/news/nicaraguan-asylum-seeker-dies-in-ice-custody-in-aurora-15252848 ("The Aurora Contract Detention Facility has also been a hot-button political issue. Congressman Jason Crow, a Democrat who represents the area, has called for the facility to be closed and for the federal government to stop using private prisons for immigrant detention."); *see also* Bloom & Galva, *supra* note 1 ("Calero-Mendoza's death last fall spurred multiple protests

        Bennet and Hickenlooper "for DHS to conduct an independent investigation to shed light on the events leading up to [Melvin]'s death."[10] *Id.* at 6 (cited sources listed in footnotes).

    e. "Continued public interest exists regarding the underlying cause of the death of a seemingly healthy 36-year-old[sic] man."[11] *Id.*

28.    Finally, RMIAN asked that ICE respond to its request for expedited processing

---

and vigils outside of the Aurora facility. His case fits into a broader pattern of preventable deaths among otherwise healthy asylum seekers at privately-run detention facilities, advocates and medical experts say.").

[10] Letter from Senators Michael Bennet and John Hickenlooper, and Congressman Crow to DHS Inspector General Cuffari and ICE Acting Director Johnson (Oct. 21, 2022), https://bit.ly/3Zc28rL ("As the ICE Office of Professional Responsibility (OPR) conducts a review of this fatality, we request that our offices be kept regularly apprised of the investigation process and results. We also request that the Department of Homeland Security (DHS) Office of Inspector General (OIG) complete a thorough review of the results and conduct an independent investigation. . . . . [W]e request a Member-level briefing to understand the circumstances surrounding Mr. Calero-Mendoza's death and what steps the Facility should take to prevent similar deaths in the future.").

[11] *See, e.g.*, Dreisbach, *A 'shocking' 911 call*, *supra* ¶ 9 (describing response of members of Congress and immigration advocates to inspection reports by outside experts of ICE detention facilities, including records related to Melvin's death, such as the recording of the 911 call described above; "Rep. Crow, who represents Aurora, called the detention officer's actions on the 911 call 'unacceptable.'"); Administrative complaint from the AIC et al. re: Abusive Overuse of Solitary Confinement and Mistreatment that Disproportionately Impacts Persons with Disabilities at the Aurora Contract Detention Facility, 4 (July 13, 2022), https://www.rmian.org/s/Solitary-Confinement-Complaint-FINAL-71323.pdf (joint submission of AIC, National Immigration Project (NIPNLG), and RMIAN compiling stories of immigrants' medical mistreatment at ACDF and noting ICE's refusal to provide a complete accounting of Melvin's death); Carina Julig, *Crow, Immigration Activists Say GEO ICE Prison Investigation Could Explain Death of [Person in Detention]*, The Sentinel (Apr. 3, 2023), https://bit.ly/48376uT ("At a tour of Aurora nonprofit Casa de Paz Monday morning, Democratic Aurora Congressperson Jason Crow said GEO has not been transparent in providing information about Calero-Mendoza's death and reiterated his belief that for-profit immigration detention centers should be shut down."); Carina Julig, *Questions Linger About Blood-clot Death of Immigrant Held in Aurora ICE-GEO Prison*, The Sentinel (Mar. 14, 2023), https://bit.ly/44OXalV ("Calero-Mendoza's family and local immigration activists have pushed for more answers, and say his death raises renewed concern about the treatment of detained immigrants and asylum seekers.").

within ten calendar days and to its FOIA Request within 20 business days, as required under law. Request at 8 (citing 6 C.F.R. § 5.5(e)(4); 5 U.S.C. § 552(a)(6)(A)(i)).

RMIAN's Follow up and ICE's Continued Violations of its FOIA Obligations

29. On July 18, 2023, after ICE had failed to respond for more than seven months, RMIAN followed up by email (Ex. 2), requesting (1) a tracking number; (2) a status update; and (3) a date for the agency's anticipated production of responsive documents.

30. On July 25, 2023, ICE sent an email to RMIAN (Ex. 3) stating, "I do not show that this request was ever received at our office. [¶] This has been placed in the processing queue and you should receive an acknowledgement letter in the near future."

31. On August 1, 2023, ICE sent another email (Ex. 4) "acknowledge[ing] receipt" of RMIAN's FOIA Request and request for expedited processing and providing a tracking number of 2023-ICFO-36834. ICE stated that RMIAN's requests were "dated 7/18/2023" and "received in this office on 7/18/2023," notwithstanding that RMIAN's requests are dated November 10, 2022 and were transmitted by email to ICE the same day.

32. In ICE's August 1, 2023, email:

　　a. ICE invoked a 10-day extension to provide a determination in response to RMIAN's FOIA Request per 5 U.S.C. § 552(a)(6)(B), adding, "Please be assured that one of the processors in our office will respond to your request as expeditiously as possible." Ex. 4.

　　b. ICE issued a boilerplate denial of RMIAN's request for expedited processing, stating:

　　　　i. "Under the DHS FOIA regulations, expedited processing of a FOIA

10

request is warranted if the request involves 'circumstances in which the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of an individual,' 6 C.F.R. § 5.5(e)(1)(i), or 'an urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information,' 6 C.F.R. § 5.5(e)(l)(ii). . . . [¶] Your request for expedited processing is denied because you do not qualify for either category under 6 C.F.R. § 5.5(e)(1). You failed to demonstrate a particular urgency to inform the public about the government activity involved in the request beyond the public's right to know about government activity generally. Your letter was conclusory in nature and did not present any facts to justify a grant of expedited processing under the applicable standards." *Id.*

33. ICE's denial of RMIAN's request for expedited processing was erroneous, including because it failed to consider the facts that RMIAN *did* present in support of the grounds contained in 6 C.F.R. § 5.5(e)(1)(i) and (ii) *and* because it wholly failed to consider or address RMIAN's request for expedited processing under 6 C.F.R. § 5.5(e)(l)(iii) and (iv).

34. Moreover, ICE still has not provided a determination in response to RMIAN's FOIA Request or produced any responsive records.

11

## CLAIMS FOR RELIEF

### *Count I: Failure to Issue Determination in Response to FOIA Request Within the Time Required, in Violation of FOIA, 5 U.S.C. § 552(a)(6)(A)*

35. RMIAN hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

36. Under FOIA, 5 U.S.C. § 552(a)(6)(A)(i), ICE must "immediately notify" (within twenty business days) the requester of its determination whether it will comply with a FOIA request and the reasons therefor. Within that time period, ICE "must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *Citizens for Resp. and Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013) (*CREW*).

37. Here, by contrast, ICE failed to provide a determination in response to RMIAN's Request over the more than ten months since RMIAN submitted its Request on November 10, 2022 (and over the more than 30 business days since ICE confirmed receipt of RMIAN's FOIA request on July 18, 2023), in violation of 5 U.S.C. § 552(a)(6)(A)(i).

38. RMIAN is therefore entitled to an order requiring ICE to immediately issue an appropriate determination in response to RMIAN's FOIA Request.

### *Count II: Failure to Timely Respond to Request for Expedited Processing and to Expedite Processing of FOIA Request in Violation of FOIA, 5 U.S.C. § 552(a)(6)(E), and DHS Regulations, 6 C.F.R. § 5.5(e)*

39. RMIAN hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

40. Under FOIA, 5 U.S.C. § 552(a)(6)(E)(ii)(I), and corresponding DHS regulations,

6 C.F.R. § 5.5(e)(4), ICE must within ten days notify a requester of its determination whether to grant or deny expedited processing of a request.

41. ICE must expedite processing of requests, like RMIAN's, that involve (1) circumstances that "could reasonably be expected to pose an imminent threat to the life or physical safety of an individual"; (2) "[a]n urgency to inform the public about an actual or alleged federal government activity"; (3) "[t]he loss of substantial due process rights"; or (4) "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 6 C.F.R. § 5.5(e)(1)(i)-(iv). ICE must give expedited requests priority and process them "as soon as practicable." 6 C.F.R. § 5.5(e)(4); *see* 5 U.S.C. § 552(a)(6)(E)(iii)).

42. ICE failed to provide any determination in response to RMIAN's November 10, 2022 request for expedited processing by November 20, 2022 in violation of FOIA, 5 U.S.C. § 552(a)(6)(E)(ii)(I), and corresponding DHS regulations, 6 C.F.R. § 5.5(e)(4).

43. And, even when ICE did provide a determination in response to RMIAN's request for expedited processing on August 1, 2023, ICE erroneously denied RMIAN's request.

44. ICE failed to expedite processing of RMIAN's Request in violation of 5 U.S.C. § 552(a)(6)(E) and 6 C.F.R. § 5.5(e)(1)(i)-(iv).

45. RMIAN is therefore entitled to an order requiring ICE to immediately expedite processing of RMIAN's FOIA Request. This Court should also enjoin ICE from charging any fees for the processing of the Request under 5 U.S.C. § 552(a)(4)(A)(iii), 6 C.F.R. § 5.11(k), and 5 U.S.C. § 552(a)(4)(A)(viii).

### *Count III: Failure to Reasonably Search for and Promptly Produce Responsive Records in Violation of FOIA, 5 U.S.C. § 552(a)*

46. RMIAN hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

47. Under FOIA, 5 U.S.C. § 552(a)(3), ICE must reasonably search for and "promptly" produce records responsive to a FOIA request and provide lawful reasons for withholding any materials as to which it claims an exemption. Typically, "promptly" means "within days or a few weeks of a 'determination' [under 5 U.S.C. § 552(a)(3)(A), (a)(6)(C)(i)], not months or years." *CREW*, 711 F.3d at 188.

48. ICE has not reasonably searched for and promptly produced responsive records in violation of FOIA, 5 U.S.C. § 552(a).

49. RMIAN is therefore entitled to an order requiring ICE to search for and promptly produce records responsive to Plaintiffs' FOIA request as required by 5 U.S.C. § 552(a)(3)(A), (a)(6)(C)(i). This Court should also enjoin ICE from charging any fees for the processing of the Request under 5 U.S.C. § 552(a)(4)(A)(iii), 6 C.F.R. § 5.11(k), and 5 U.S.C. § 552(a)(4)(A)(viii).

WHEREFORE, RMIAN respectfully requests that this Court enter judgment in its favor and against ICE, and:

    a. Order ICE to immediately issue an appropriate response to RMIAN's FOIA Request;

    b. Order ICE to immediately expedite processing of RMIAN's FOIA Request and to search for and release all responsive records without charging RMIAN any fees for its processing of the Request;

    c. Award RMIAN its costs and reasonable attorneys' fees; and

    d. Grant any further relief that this Court deems just and proper, and any other relief as allowed by law.

Dated: September 13, 2023      Respectfully submitted,

    /s/ *Adrienne D. Boyd*
Adrienne D. Boyd
Colin M. O'Brien
**ARNOLD & PORTER KAYE SCHOLER LLP**
1144 Fifteenth Street
Suite 3100
Denver, CO 80202-2569
Phone: (303) 863-1000
Adrienne.Boyd@arnoldporter.com
Colin.OBrien@arnoldporter.com

Liam E. O'Connor
**ARNOLD & PORTER KAYE SCHOLER LLP**
Three Embarcadero Center
10th Floor
San Francisco, CA 94111-4024
Phone: (415) 471-3100
Liam.E.OConnor@arnoldporter.com

ATTORNEYS FOR PLAINTIFF