# EXHIBIT 1



Laura Lunn <llunn@rmian.org>

# FOIA Request

**Laura Lunn** <llunn@rmian.org>                                              Thu, Nov 10, 2022 at 2:23 PM
To: ICE-FOIA@dhs.gov
Cc: Mekela Goehring <mgoehring@rmian.org>

Good afternoon,

Please find attached a Freedom of Information Act Request filed on behalf of Rocky Mountain Immigrant Advocacy Network (RMIAN) seeking records related to the death of Melvin Calero Mendoza, who passed away in ICE custody at the Aurora Contract Detention Facility in Colorado on October 13, 2022.

Should you have any questions, please do not hesitate to contact me. Thank you for your time and attention to this matter.

Regards,

Laura Lunn

--

Laura Lunn
Pronouns: *her, she, ella*
Director of Advocacy & Litigation
Rocky Mountain Immigrant Advocacy Network (RMIAN)
7301 Federal Boulevard, Suite 300 (top floor of Chase Bank building)
Westminster, Colorado 80030
Phone: (720) 370-9100
llunn@rmian.org
www.rmian.org

Colorado Gives Day is on December 6! **Schedule your donation today**!

*This message may contain confidential and privileged information. If it has been sent to you in error, please reply to advise the sender of the error and then immediately delete this message.*

Do you speak a second language? Join RMIAN as a volunteer interpreter and/or translator!

---

📄 **RMIAN FOIA Request - Melvin Calero Mendoza - 11.10.22.pdf**
856K



7301 Federal Blvd., Ste. 300
Westminster, CO 80030

(303) 433-2812
(303) 433-2823 FAX
www.rmian.org

November 10, 2022

*Sent via e-mail to* ICE-FOIA@dhs.gov

U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street, S.W., Stop 5009
Washington, D.C. 20536-5009

**RE:** **Freedom of Information Act Request**
**Melvin Ariel Calero Mendoza**

DOB: ▇▇/86
DOB according to ICE's records: ▇▇/83
Case #▇▇▇▇▇▇

Dear FOIA Officers,

Rocky Mountain Immigrant Advocacy Network ("RMIAN") submits this letter as a request for records[1] under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.* and Privacy Act of 1974, 5 U.S.C. § 552a. RMIAN is a 501(c)(3) nonprofit organization that works to ensure justice for adults in immigration detention, unaccompanied minors, as well as children and their families. RMIAN promotes knowledge of legal rights, provides effective representation to ensure due process, works to improve detention conditions, and promotes a more humane immigration system, including ending immigration detention.

---

[1] The term "records" as used herein includes, but is not limited to, communications, correspondence, directives, documents, data, videotapes, audiotapes, e-mails, faxes, files, guidance, guidelines, standards, evaluations, instructions, analyses, memoranda, agreements, notes, orders, policies, procedures, protocols, reports, rules, manuals, technical specifications, training materials, and studies, including records kept in written form, or electronic format on computers and/or other electronic storage devices, electronic communications and/or videotapes, as well as any reproductions thereof that differ in any way from any other reproduction, such as copies containing marginal notations.

RMIAN requests the following records related to the death of Melvin Ariel Calero Mendoza[2] ("Mr. Calero Mendoza") who passed away on October 13, 2022, when in the custody of U.S. Immigration and Customs Enforcement ("ICE") while detained in Aurora, Colorado.

RMIAN seeks disclosure of any and all responsive records, including all electronic documents and communications in the custody of ICE, the Department of Homeland Security ("DHS"), and any other subcomponents or subcontractors (collectively the "DHS"), as described in the specific requests listed below.

### I.   Records Requested

On April 13, 2022, U.S. Border Patrol apprehended Mr. Calero Mendoza and placed him into the custody of the Department of Homeland Security ("DHS"). On April 15, 2022, DHS transferred Mr. Calero Mendoza to the Torrance County Detention Facility ("TCDF") in Estancia, New Mexico. On May 2, 2022, DHS transferred him to the Aurora Contract Detention Facility ("Aurora facility"), which is owned and operated by GEO Group, Inc. ("GEO") and located in Aurora, Colorado.

On June 27, 2022, an immigration judge issued Mr. Calero Mendoza a bond. He could not afford to pay the bond amount and remained detained during the pendency of his immigration case. Mr. Calero Mendoza feared returning to Nicaragua and sought asylum protections in the United States. After six months of detention, on October 13, 2022, he died while in ICE custody.

RMIAN requests **all records in DHS' possession pertaining to Mr. Calero Mendoza**, including but not limited to the following:

1. All records pertaining to the circumstances leading to Mr. Calero Mendoza's death, including but not limited to, reports, notes, forms, complaints, incident reports, supplementary reports, witness statements, daily activity logs, and incident detail reports.

2. Any and all medical and mental health records from when Mr. Calero Mendoza entered DHS custody on April 13, 2022, until October 13, 2022, including but not limited to medical, dental and mental health intake screening conducted at the TCDF and Aurora facility, indications of preexisting conditions, any and all kite requests seeking medical assistance (both paper and electronically filed), records/notes/observations from any medical/mental health appointments, diagnoses, and medication(s) provided and/or prescribed; records of injuries and actions taken.

3. All video footage from within the Aurora facility from October 13, 2022, from Aurora South E-dorm; hallways between Aurora South E-dorm and where Mr.

---

[2] *See* https://www.ice.gov/news/releases/nicaraguan-man-ice-custody-passes-away-colorado-hospital.

    Calero Mendoza was transferred within the facility; the medical unit; and Mr. Calero Mendoza being transferred into the care of emergency medical services ("EMS") personnel.

4. Any audio recordings of Mr. Calero Mendoza's phone conversations made from the Aurora facility ranging between May 2, 2022 and October 13, 2022 and the 911 call to EMS personnel.

5. Information identifying the place of employment for the EMS personnel who responded to the 911 call; names of responding EMS personnel; names of medical providers who cared for Mr. Calero Mendoza at the University of Colorado Hospital in Aurora, Colorado; any medical records obtained by DHS from the EMS provider and the University of Colorado Hospital.

6. Aurora facility policies from 2017 to present, including medical observation post policies; medicine administration policies; segregation policies; suicide watch policies; use of force policies; and the written plan created by the facility administrator that must be followed in the event of a fire, building evacuation, or medical emergency. This request also includes any policy changes that have been implemented since Mr. Calero Mendoza's death.

7. Discipline, training, employee instruction, contractor instruction, policy changes, procedure changes, facility changes, staffing changes, contractor changes, and/or remedial measures, provided, announced, implemented, or taken after October 1, 2022, which relate in any way to Mr. Calero Mendoza's care, observation, treatment, diagnosis, handling, injury, death, or experiences.

8. All records pertaining to Mr. Calero Mendoza's detention, including location logs, kites, grievances, responses to kites and grievances, and medical and mental health screenings and assessments that include his name or any reference to the circumstances of his death.

9. The "Detainee Death Review," "Detainee Death Report," and/or "Healthcare and Security Compliance Analysis" reports and any records relied upon to complete those reports including any information provided or conducted by a contractor (e.g. Creative Corrections)—or equivalent internal procedural analysis—completed by or for ICE Office of Professional Responsibility, ICE Office of Detention Oversight, or any other DHS entity related to the death of Mr. Calero Mendoza.

10. A complete copy of any independent autopsies supplied to DHS or ICE, including those by county or state medical examiners, for Mr. Calero Mendoza. This should also include any toxicology reports completed.

11. A copy of the death certificate for Mr. Calero Mendoza.

12. A complete copy of any/all documents titled "Mortality Review," "Event Review," "Root Cause Analysis," "Interim Notice of Detainee Death," "OPR Detainee Death Review," or "Action Plan," created by the ICE Health Services Corps ("IHSC") regarding the death of Mr. Calero Mendoza and all records relied upon to create the above items.

13. Any communications regarding the events that took place on October 13, 2022, between IHSC, ERO staff, GEO Group, Inc. staff, and any contractor at the Aurora facility.

14. Any communications or records regarding Mr. Calero Mendoza's circumstances between ICE and the Nicaraguan consulate, embassy, or other government entities.

15. Any Root Cause Analysis created by the IHSC for any Sentinel Event occurring at the Aurora facility between January 1, 2022, to present.

16. Any electronic communications including but not limited to e-mails, text messages, and instant messages on any platform, to and from any Enforcement and Removal Operations ("ERO") Field Office Director, Acting Field Office Director, Deputy Field Office Director, Assistant Field Office Director, Officer in Charge, Acting Officer in Charge of ICE's Denver Field Office, Executive Associate Directors for ERO, ICE Headquarters Responsible Officials, the Associate Director for the ICE Office of Professional Responsibility; Assistant Director ("AD") for the Office of Congressional Relations; AD for Custody Management; AD for IHSC; DHS Office of Civil Rights and Civil Liberties; and/or DHS Office for Immigration Detention Oversight containing the words "Melvin Calero Mendoza," "Calero Mendoza," "Melvin Calero," or "Melvin Mendoza." The time range for this search should be from April 13, 2022, to the date the officer engages in this search.

17. Any communications occurring on or after January 1, 2020, to or from ICE's Detention Standards Compliance Unit regarding the Aurora facility's compliance or non-compliance with ICE's Performance-Based National Detention Standards.

18. Any Health Care Compliance Assessment or ICE Uniform Corrective Action Plans prepared by IHSC following Mr. Calero Mendoza's death or returned to ICE by GEO Group, Inc.

19. A current copy of the contract between ICE and GEO Group, Inc. related to the operations of the Aurora facility, including any provisions related to detention standards and staffing of the medical unit within the facility.

20. All Significant Incident Reports ("SIR") and any associated records relating to Aurora facility or immigrants detained therein between January 1, 2022, and the present.[3]

---

[3] ICE's SIR policy is detailed at https://www.dhs.gov/sites/default/files/publications/privacy_pia_23_ice_sen.pdf.

21. All documents pertaining to "Detainee Reporting and Information Line" calls made from the Aurora facility between January 1, 2022, and the present.[4] RMIAN requests the release of all segregable portions of otherwise exempt material. If, under applicable law, any of the information requested is considered exempt, please describe in detail the nature of the information withheld, the specific exemption or privilege upon which the information is withheld, and whether the portions of withheld documents containing non-exempt or non-privileged information have been provided.

22. Documentation of who worked, where, doing what, at or for the Aurora facility, between 12:01 a.m. Wednesday, October 12, 2022 and 12:01 a.m. Friday, October 14, 2022, including Records in whatever form of, regarding or related to: schedules, schedule changes, absences, tardiness, on-the-clock time, off-the-clock time, paid and unpaid time, turnkey activities, ID swipes, card swipes, grants and denials of access, code entries, biometrics scans, signing-in, signing-out, security clearance, gate opening, secured door opening, rosters, control logs, staff logs, staff notes, billing, and invoicing.

## II.   Expedited Processing is Merited

RMIAN requests expedited processing pursuant to 5 U.S.C. § 552(a)(6)(E) and 6 C.F.R. § 5.5(e)(1).

ICE policy requires transparency when a person passes away while in the agency's custody.[5] It calls for ICE to release information to the public that "timely, accurately, appropriately, and with sufficient detail" depicts the circumstances relating to the person's death. *Id.* A "compelling need" to produce these records exists and each basis for granting a request for expedited processing is satisfied. *Id.*

*First*, the records requested relate to the death of a person within ICE custody at the Aurora facility and expedited processing is required because they could be an "imminent threat to the life or physical safety" of those who continue to be detained in the same space and by the same custodians. 6 C.F.R. § 5.5(e)(1)(i). On December 4, 2017, Kamyar Samimi passed away while in ICE custody at the Aurora facility. Despite an initial report from ICE that there was no fault involved, a supplementary investigation revealed that medical staff members made medically unjustifiable decisions in their administration of care. An internal ICE review concluded that staff in the Aurora facility committed numerous violations of ICE detention standards.[6] Subsequently, the DHS Office of Inspector General ("OIG")

---

[4] Information about the reporting line can be found here: https://www.ice.gov/contact/detention-information-line#:~:text=The%20ICE%20ERO%20Detention%20Reporting,%2 D888%2D351%2D4024.
[5] ICE Directive 11003.5, Notification, Review, and Reporting Requirements for Detainee Deaths (Oct. 25, 2021), https://www.ice.gov/doclib/detention/directive11003-5.pdf.
[6] ICE Office of Professional Responsibility, External Reviews and Analysis Unit Detainee Death Review: Kamyar Samimi (May 2018), https://bento.cdn.pbs.org/hostedbento-prod/filer_public/RMPBS%20PDFs/ RMPBS%20News/ 2018-ICFO-47347.pdf; U.S. House of Representatives Committee on Oversight and

investigated four ICE detention facilities across the country, including the Aurora facility. In a 2019 report, the OIG found that the Aurora facility does not meet ICE's own detention standards.[7] Yet, over three years later, ICE and GEO have not meaningfully addressed any of the violations reported in the OIG investigation. Therefore, this request requires expedited processing to mitigate the likelihood of substantial harm and/or death to persons detained within the Aurora facility.

*Second*, expedited processing is needed because there is "[a]n urgency to inform the public about an actual or alleged federal government activity." 6 C.F.R. § 5.5(e)(1)(ii). Mr. Calero Mendoza's death generated significant attention from the public.[8] Members of Congress, Rep. Jason Crow, Sen. Bennet, and Sen. Hickenlooper, jointly called for DHS to conduct an independent investigation to shed light on the events leading up to Mr. Calero Mendoza's death.[9] Continued public interest exists regarding the underlying cause of the death of a seemingly healthy 36-year-old[10] man who was incarcerated solely because he sought asylum protections in the United States.

*Third*, unanswered questions about what happened to Mr. Calero Mendoza cause immense stress and poor mental health for those who witnessed what took place. RMIAN represents numerous clients who observed Mr. Calero Mendoza's medical emergency and the response of officials within the facility. The requested records are an essential aspect of advising and orienting clients detained in the Aurora facility. The impact of these events impact clients' ability to meaningfully participate in their immigration proceedings, which in turn negatively impacts their due process rights. 6 C.F.R. § 5.5(e)(1)(iii). Moreover, RMIAN seeks to protect clients' rights as witnesses under governing ICE policies. Consequently, ICE's failure to timely release records may interfere with RMIAN attorneys' ability to effectively advise clients of their rights as well as clients' ability to vindicate their statutory and due process right to counsel.

---

Reform and Subcommittee on Civil Rights and Civil Liberties Report (Sep. 2020), https://oversight.house.gov/sites/ democrats.oversight.house.gov/files/2020-09-24.%20Staff%20Report%20on%20ICE%20Contractors.pdf ("During Mr. Samimi's last hours, he was placed on suicide watch. He exhibited seizure symptoms and vomited and urinated on himself, but multiple calls to the on-call physician, who is required to be available 24 hours per day, were never answered.").

[7] DHS Office of Inspector General Report, *Concerns about Detainee Treatment and Care at Four Detention Facilities* (Jun. 3, 2019), (describing the inappropriate segregation practices in the Aurora facility, identifying "serious issues with the administrative and disciplinary segregation" used, describing the lack of outdoor space or opportunity for recreation provided, and lack of contact visitation with loved ones).

[8] CBS Colorado, *Melvin Ariel Calero-Mendoza, Nicaraguan father of 2, dies in ICE custody at Aurora facility* (Oct. 20, 2022), https://www.cbsnews.com/colorado/news/melvin-ariel-calero-mendoza-nicaraguan-father-dies-ice-custody-aurora-facility/; NBC 9 News Colorado, *Nicaraguan man sought better life before he died in ICE custody in Aurora, family says* (Oct. 18, 2022), https://www.9news.com/article/news/local/nicaraguan-man-sought-better-life-died-in-ice-custody/73-0bcf578e-e8bc-4c0c-9613-aefaad250f3a; Westword, Conor McCormick-Cavanagh, *Nicaraguan Asylum Seeker Dies in ICE Custody in Aurora* (Oct. 17, 2022), https://www.westword.com/news/nicaraguan-asylum-seeker-dies-in-ice-custody-in-aurora-15252848.

[9] https://crow.house.gov/sites/evo-subsites/crow.house.gov/files/evo-media-document/2022.10.21-final-icedhs-letter_0.pdf.

[10] Mr. Calero Mendoza's family reports his actual age was 36 (DOB: ▮▮/1986). ICE erroneously reported his age as 39.

*Fourth*, the death of Mr. Calero Mendoza is "a matter of widespread" interest that implicates "the government's integrity" and "affect[s] public confidence." 6 C.F.R. § 5.5(e)(1)(iv). Mr. Calero Mendoza's death is not an isolated event. The Aurora facility has a lengthy history of providing inadequate medical care for persons detained ICE custody.[11] Three people held at the Aurora facility died while in ICE custody.[12] As discussed above, the last time someone passed away at the Aurora facility, it was found that medical staff members' actions were unjustifiable and did not follow the appropriate standard of care. Further fracturing public confidence is the OIG report that indicated the Aurora facility was in violation of binding ICE detention standards. ICE has yet to mitigate those violations and continues to act with impunity. Public confidence in the care provided within the facility is shaken. A robust response to this request will allow for further transparency regarding the conditions of confinement and medical care offered to persons within the Aurora facility.

RMIAN meets the requirements of 5 U.S.C. § 552(a)(6)(E) and 6 C.F.R. § 5.5(e)(1). Expedited processing is warranted.

I hereby certify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing statements in support of expedited processing are true and correct to the best of my knowledge and understanding.

### III. Fees Should be Waived or Limited

RMIAN is a 501(c)(3) nonprofit organization that provides no-cost legal and social services to immigrants in the Rocky Mountain region. RMIAN seeks a waiver of fees for document search, review, and duplication because disclosure of the information sought is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); 6 C.F.R. § 5.11(k).

Fee waivers should be granted here, given that Congress intended FOIA to be construed liberally in favor of granting waivers for noncommercial entities like RMIAN. *See Judicial Watch Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters.")

---

[11] American Immigration Council (AIC) Complaint, *RE: Failure to provide adequate medical and mental health care to individuals detained in the Denver Contract Detention Facility* (Jun. 4, 2018), https://www.americanimmigration council.org/sites/default/files/general_litigation/complaint_demands_investigation_into_inadequate_medical_and_mental_health_care_condition_in_immigration_detention_center.pdf; AIC Complaint (2019), *SUPPLEMENT— Failure to provide adequate medical and mental health care to individuals detained in the Denver Contract Detention Facility* (Jun. 11, 2019), https://www.americanimmigrationcouncil.org/sites/default/files/general_litigation/complaint_supplement_failure_to_provide_adequate_medical_and_mental_health_care.pdf; ACLU of Colorado Report, *Cashing in on Cruelty: Stories of death, abuse and neglect at the GEO immigration detention facility in Aurora* (Sep. 17, 2019), https://www.aclu-co.org/sites/default/files/ACLU_CO_Cashing_In_On_Cruelty_09-17-19.pdf; AIC/RMIAN/IJI Complaint (2022), Re: Violations of ICE COVID-19 Guidance, PBNDS 2011, and Rehabilitation Act of 1973 at the Denver Contract Detention Facility (Feb. 11, 2022), https://www.americanimmigrationcouncil.org/sites/default/files/research/complaint_against_ice_medical_neglect_people_sick_covid_19_colorado_facility_complaint1.pdf.

[12] *See* https://www.ice.gov/news/releases/nicaraguan-man-ice-custody-passes-away-colorado-hospital.

(citing *McClellan Ecological Seepage Situation v. Carlucci,* 835 F.2d 1282, 1284 (9th Cir.1987) (quoting 132 CONG. REC. 27,190 (1986) (Sen. Leahy)).

### IV. RMIAN is Entitled to a Timely Response

RMIAN appreciates your prompt attention to this request. In accordance with DHS regulations, we seek to receive a decision on our request for expedited processing within 10 calendar days. *See* 6 C.F.R. § 5.5(e)(4). We also anticipate a written response to our FOIA request within 20 business days. 5 U.S.C. § 552(a)(6)(A)(i).

RMIAN reserves the right to appeal a decision to deny a waiver of fees, withhold any records, or deny expedition of this request. If this request is denied in whole or in part, RMIAN asks that any deletions or omissions be justified by reference to specific FOIA exemptions. RMIAN expects the release of all segregable portions of otherwise exempt material.

This request will remain as an ongoing FOIA request until such a time as DHS conducts a fulsome search. Therefore, any records that come within the possession of DHS prior to the final response to this FOIA request are within the scope of this request. RMIAN certifies that the foregoing is true and correct to the best of its knowledge and belief. *See* 6 C.F.R. § 5.5(e)(3).

Please direct all communications and responses to this request to:

Laura Lunn
Director of Advocacy & Litigation
Rocky Mountain Immigrant Advocacy Network
7301 Federal Blvd., Ste. 300
Westminster, CO 80030
T: 720-370-9100
F: 303-433-2823

RMIAN welcomes an open line of communication regarding rolling productions and prioritizing expedient responses to this request for information.

Thank you for your prompt attention to this matter.

Sincerely,
ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK

Laura Lunn
Director of Advocacy & Litigation

Mekela Goehring
Executive Director